# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES | : | |
| | : | |
| | : | |
| v. | : | Case No. 98-CR-0210-CCB |
| | : | |
| ANDRE ALBERT ADDISON | : | |
| | : | |
| Defendant | : | |

## SUPPLEMENTAL MEMORANDUM TO MOTION FOR A SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) [1]

Mr. Andre Albert Addison (Mr. Addison) is serving three concurrent life sentences for crimes he committed when he was a young man. In fact, he has been in continuous custody since May 5, 1998, when he was only 27 years old; and, now at age 52, having been incarcerated for the last 25 years, Mr. Addison has already spent nearly half of his life in prison.[2]

Two of Mr. Addison's life sentences are connected to unlawful drug-related killings perpetrated by a co-defendant who was released from prison several years ago. Mr. Addison was not present at the scene of either of the killings, yet he remains

---

[1] On or about March 17, 2022, Mr. Addison filed, *pro se,* a Memorandum of Law in Support of Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A), ECF 418, (herein: "Mr. Addison's Motion"); in April, 2022, this Court appointed the undersigned as CJA counsel to assist Mr. Addison in this matter, *see* ECF 421 and ECF 424.

[2] *See* Presentence Investigation Report ("PSI"), p. 1: Mr. Addison's date of birth is: December 11, 1970. It appears that the Presentence Investigation Report was not docketed; undersigned counsel will provide a courtesy copy to the Court and the Government upon filing this Supplemental Memorandum.

incarcerated and, as matters stand, will do so for the remainder of his life. His third life sentence was imposed in connection with a conviction for Possession with Intent to Distribute Narcotics, 21 U.S.C. § 841.

Mr. Addison does not challenge the validity of the jury's verdicts nor does he challenge the validity or appropriateness of the sentence that the sentencing judge imposed.[3] Nonetheless, this Court has the authority under 18 U.S.C. § 3582(c)(1)(A) to reduce Mr. Addison's sentence based on a constellation of "extraordinary and compelling reasons," including: (i) the drastic disparity between Mr. Addison's sentence and that of his co-defendants; (ii) the significant changes in sentencing law and practices since 2000, such that Mr. Addison would likely receive a substantially shorter sentence if prosecuted today for the same crime; and (iii) the lengthy term of imprisonment Mr. Addison has already served.

Mr. Addison is exactly the type of individual deserving of a reduction in sentence because his "extraordinary and compelling reasons" make clear that the sentence initially imposed on him no longer serves legislative objectives. *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058 (S.D.N.Y. Apr. 6, 2020). So, after

---

[3] To be clear, to the extent that Mr. Addison's *pro se* motion for a sentence reduction suggests or argues that the jury's verdict was somehow inappropriate, herein, Mr. Addison, through undersigned counsel, withdraws those arguments. Further, to the extent that Mr. Addison's *pro se* motion for a sentence reduction suggests or argues that the sentencing court committed errors in determining the applicable United States Sentencing Guidelines' provisions, and/or suggests or argues that the sentencing court committed errors in applying applicable Guidelines' provisions, and/or in any other way suggests or argues that an illegal and/or inappropriate sentence was imposed, herein, Mr. Addison, through undersigned counsel, withdraws those arguments.

weighing the relevant factors under 18 U.S.C. § 3553(a), this Court, respectfully, should reduce Mr. Addison's sentence to 30 years — a significant and weighty sentence that would comport with current sentencing practices and would be a sentence that is not greater than necessary to comply with the purposes of sentencing. *See* 18 U.S.C. § 3553(a).

## BACKGROUND

### I.    Facts and Procedural History

On or about May 5 1998, Mr. Addison was arrested in connection with this matter. [4] *See* PSI, p. 1. He made his Initial Appearance and was ordered detained on May 18, 1998. He has been in continuous federal custody since that date, nearly 25 years ago.

In a multi-count, multi-defendant, Third Superseding Indictment, ECF 63, Mr. Addison was charged with: Count One: Conspiracy to Distribute and Possess with Intent to Distribute Narcotics, at least five kilograms of cocaine, 21 U.S.C. § 841 and § 846; Count Two: Killing in Furtherance of a Drug Conspiracy, 21 U.S.C. § 848(e);

---

[4] According to Mr. Addison, he was apprehended by Baltimore City police officers on May 1, 1998 in connection with arrest warrants that had been issued from the Maryland District Court in connection with a State investigation that linked Mr. Addison to the possession of controlled substances and the possession of firearms within Baltimore County and Baltimore City. He was charged separately in Baltimore County and Baltimore City. Although he remained detained in a State facility, in effect, he was then transferred to federal custody, on the strength of a Criminal Complaint, on or about May 5, 1998. Most of the activities and evidence that served as the factual predicates for the State charges were later incorporated into the Third Superseding Indictment in the matter *sub judice;* at some point, the State charges were *nolle prossed.*

Count Four: Possession with Intent to Distribute Narcotics, 21 U.S.C. § 841; Count Five: Felon in Possession of a Firearm, 18 U.S.C. § 922(g)(1).[5]

Count One, Conspiracy to Distribute Narcotics, alleged that one of the overt acts committed by Mr. Addison and Mr. Darrel Burrell, a codefendant, to carry out the object of the conspiracy, was the murder of Mr. Sylvester Snider on May 25, 1996; it was further alleged that another overt act committed by Mr. Addison and Mr. Burrell to carry out the object of the conspiracy was the murder of Mr. Antwan Greer on June 12, 1996. *See* Third Superseding Indictment, at Count One, ¶ 3(g).

In Count Two, pursuant to 21 U.S.C. § 848(e)(1)(A), Mr. Addison and Mr. Burrell were charged with the substantive count of having murdered Mr. Greer, on June 12, 1996, while Mr. Addison and Mr. Burrell were engaging in violations of 21 U.S.C. § 841 and § 846. *Id*, Count Two.

Of relevance to this motion is that the Third Superseding Indictment, Count One, alleged that, as an overt act of the conspiracy, Mr. Adrian Boone and Mr. Vernon Ray, two of Mr. Addison's codefendants, murdered Mr. Bernard Miller on September 7, 1997, for the purpose of carrying out the object of the conspiracy. *Id*, Count One, at ¶ 3(h). And, in Count Three, Mr. Marcel Brown, Mr. Kelley McLeod,

---

[5] Painting with broad strokes, a sketch of the gravamen of the case depicts Mr. Addison as the leader of a drug trafficking organization that distributed cocaine in East Baltimore; Mr. Addison would obtain large quantities of cocaine from New York that he would then repackage and distribute to different workers who would sell Mr. Addison's cocaine on the streets, primarily in the area of the 800 block of Madeira Street; Mr. Addison also employed enforcers who utilized firearms, supplied by Mr. Addison, to further Mr. Addison's drug trafficking objectives. *See* PSI, ¶¶ 79, 11-12.

Mr. Boone, and Mr. Ray were charged with the substantive count of having murdered Mr. Miller on September 7, 1997, while they were engaging in violations of 21 U.S.C. § 841 and § 846. *Id*, Count Three.

In connection with the Third Superseding Indictment, Mr. Addison pleaded not guilty and proceeded to trial, along with Mr. Burrell and Mr. Ray.[6]

On March 13, 2000, Mr. Addison was convicted of Counts One, Two, and Four.[7] Mr. Burrell was convicted of Counts One and Two. And, Mr. Ray was convicted of Counts One and Three. *See* Verdict Form, ECF 178. [8]

---

[6] The remaining codefendants cases were resolved by plea agreements:

   i.  Mr. Brown pleaded guilty to killing in furtherance of a drug conspiracy (a shooter in the Bernard Miller murder), 21 U.S.C. § 848(e), and was sentenced to 151 months of incarceration; it appears that Mr. Brown cooperated with the government in the prosecution of codefendants.

  ii.  Mr. McLeod pleaded guilty to killing in furtherance of a drug conspiracy (a shooter in the Bernard Miller murder), 21 U.S.C. § 848(e), and was sentenced to 151 months of incarceration; it appears that Mr. McLeod cooperated with the government in the prosecution of codefendants.

 iii.  Mr. Boone pleaded guilty to 21 U.S.C. §§ 841 and § 846 and was sentenced to 235 months of active incarceration; he was named in the Third Superseding Indictment as a participant in the murder of Mr. Bernard Miller.

 iv.  Mr. Keith Cook pleaded guilty to killing in furtherance of a drug conspiracy (the Bernard Miller murder), 21 U.S.C. § 848(e), and was sentenced to 240 months of incarceration; it appears that Mr. Cook was the shooter who fired the bullets that were fatal to Mr. Miller; Mr. Cook did not cooperate with the government in the prosecution of codefendants.

  v.  Finally, Mr. Morgan Kelly, the only codefendant not implicated in a drug-related murder, pleaded guilty to having violated 21 U.S.C. §§ 841 and 846 and was sentenced to 57 months of active incarceration.

[7] It appears that Count Five was not submitted to the jury for a verdict.

[8] The Verdict Form appears to indicate that the jury was not asked to make special findings regarding the quantity of controlled substances trafficked by the conspiracy and that the jury was not asked to make special findings regarding the murders of Mr. Snider and Mr. Greer.

Regarding Count One, inasmuch as the drug trafficking conspiracy involved the distribution of at least five kilograms of cocaine, the mandatory minimum term of imprisonment was ten years and the maximum term of imprisonment was life, 21 U.S.C. § 841(b)(1)(A); regarding Count Two, murder in furtherance of a drug trafficking conspiracy, the mandatory minimum term of imprisonment was twenty years and the maximum term of imprisonment was life, 21 U.S.C. § 848 (e); regarding Count Four, possession with intent to distribute at least five kilograms of cocaine, the mandatory minimum term of imprisonment was ten years and the maximum term of imprisonment was life. *See* PSI, ¶¶ 76, 77, 78.

Mr. Addison's sentencing hearing was held on November 3, 2000; at that hearing, regarding the United States Sentencing Guidelines ("U.S.S.G."), the Court found that Mr. Addison's criminal history category was II. *See* Sentencing Transcripts ("ST"), p. 10: 15-18, ECF 235. [9] The Court adopted the findings of the Probation Office as detailed in the Presentence Investigation Report "with respect to the total offense level of 47 …". [10] *See* ST, p. 24: 16-19. However, the Court went on to grant Mr. Addison a one level downward departure from the total offense level of 47 due to

---

[9] The Probation Office had determined that Mr. Addison's Criminal History Category was III. *See* PSI, ¶45.

[10] The Probation Officer had concluded that in connection with Count Two, the murder of Mr. Antwan Greer, the Base Offense Level was 43 pursuant to 21 U.S.C. § 848(e) and U.S.S.G. § 2A1.1. *See* PSI, ¶¶ 16 and 17. Then, the Probation Officer assessed a four level upward adjustment for Mr. Addison having been the leader of the organization which included four or more members, § 3B1.1(a). *Id*, ¶ 20. Accordingly, the Probation Officer finalized the final adjusted base offense level as 47.

the oppressive conditions of confinement that Mr. Addison had experienced while in the Baltimore City Detention Center, *id*, 19-20. "Well, … my conclusion is that the role adjustment is appropriate across the board, so that we're left with a level 46, Category II." *Id*, p. 30: 3-6.

Accordingly, inasmuch as it was determined that Mr. Addison's final adjusted base offense level was 46 and his Criminal History Category was II: pursuant to U.S.S.G Chapter Five, the sentencing range for a base offense level of 46 and a Criminal History Category II was, and is, life. [11]

---

[11] It appears safe to assume that the Probation Officer would have determined that in connection with Count One, Mr. Addison would have been subject to the U.S.S.G. § 2D1.1(d)(1) cross-reference to the Guidelines' murder provision, U.S.S.G. § 2A1.1, in connection with the murders of Mr. Snider and Mr. Greer which were alleged to have been overt acts committed by Mr. Addison and Mr. Burrell to consummate the object of the drug trafficking conspiracy; so, Mr. Addison's Base Offense Level would have been determined to be 43 on Count One, and inasmuch as the Court indicated that the § 3B1.1(a) four level enhancement was applicable "across the board" the adjusted offense level would have been at least 47.

It appears that in connection with Count Four, based upon the testimony at trial, the Base Offense Level would have been 38 because Mr. Addison's activities involved more than 150 kilos of cocaine, and with application of enhancements for the possession of a firearm and for having been the leader of the organization which included four or more members, the adjusted offense level would have been 44. *See* U.S.S.G. § 2D1.1(c)(4); § 2D1.1(b)(1) and § 3B1.1(a). (1998 Version)  However, *see, United States v. Nicholson*, Crim. No. TDC-03-0268, ECF 394 (D. Md. May 21, 2021) (the court reduced the defendant's sentence for drug and money laundering offenses to 252 months because of the "gross" sentencing disparity between the imposed life term and the much lower term he would likely receive today. It noted that "sentences presently imposed in this District for drug trafficking offenses . . . rarely reach 292 months, much less 360 months." *Id.* at 10. *See also United States v. Wilson*, 2021 WL 1312904, at *9 (D. Md. Apr. 7, 2021) (reducing defendant's 300-month sentence for drug and firearm offenses to 204 months); *United States v. Martin*, 2021 WL 3172278 (D. Md. July 27, 2021) (reducing sentence from 400 months to 300 months for defendant who "traffick[ed] in "large quantities of drugs" and was "involved in the commission of multiple robberies and murders," despite his "substantial prior record" and multiple disciplinary infractions).

The Court, compelled by the United States Sentencing Guidelines, committed Mr. Addison to the custody of the United States Bureau of Prisons to be imprisoned for a total term of life on each Count of conviction to run concurrent with one another. *See* Judgment, ECF 230.[12]

Mr. Addison timely appealed, and the U.S. Court of Appeals for the Fourth Circuit affirmed his conviction and sentence in 2003.

**Institutional Request for Compassionate Release**

On November 30, 2021, Mr. Addison received a denial letter from Mr. E. Bradley, Warden, in response to Mr. Addison's November 17, 2021 request that the Bureau of Prisons motion this Court for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) based on the reasonable fear that his preexisting medical conditions created a serious risk of serious illness or death should he contract the COVID-19 virus. *See,* ECF 418, Mr. Addison's Motion, Exhibits B and C.

It has been held that a defendant may move a court for compassionate release thirty days after the warden receives his request. *United States v. Azianbidji*, Crim. No.

---

[12] In May, 2000, the Court had sentenced Mr. Burrell to life imprisonment in connection with having been convicted of violating 21 U.S.C. § 848 (e) — killing Mr. Antwan Greer in furtherance of the conspiracy to distribute narcotics in violation of 21 U.S.C. § 846 and § 841. After successful appeals to the Fourth Circuit Court of Appeals, Mr. Burrell was released from federal custody after having served approximately 15 years for his role in the murder of Mr. Greer. Mr. Ray was originally sentenced to 262 months imprisonment for his role in the conspiracy to distribute cocaine, 21 U.SC. § 841 and § 846, and for his role in the killing of Mr. Bernard Miller in violation of 21 U.S.C. § 848(e). Mr. Ray too was successful on appeal and was released from federal custody after having served about five years in prison.

PWG-17-253, 2021 WL 307416, at *3 (D. Md. Jan. 29, 2021) (citing District

authority); *United States v. Fletcher*, Crim. No. TDC-05-179, 2020 WL 3972142, at *2

(D. Md. July 13, 2020).   And, moreover, a defendant is not required to raise the same

arguments to the Bureau of Prisons that he later raises with a court. *Azianbidji*, 2021

WL 307416, at *3; *United States v. Holloway*, Crim. No. ELH-09-363, 2020 WL

5893639, at *7-8 (D. Md. Oct. 5, 2020).

Nonetheless, in an abundance of caution, on March 16, 2023, through

undersigned counsel, Mr. Addison requested the warden of USP Canaan, on behalf of

the Bureau of Prisons, to petition this Court for a sentence reduction pursuant to 18

U.S.C. § 3582 (c)(1)(A) based upon the reasons asserted in this memorandum. *See*

Exhibit One.  Thus, as of April 16, 2023, regarding the specific grounds that Mr.

Addison raises in this motion, Mr. Addison will have satisfactorily pursued

administrative remedies, as required by § 3582(c)(1)(A).[13]

## LEGAL ARGUMENT

**I.**     **This Court Has the Authority to Reduce Mr. Addison's Sentence Pursuant to § 3582(c)(1)(A)(i) Based on "Extraordinary and Compelling Reasons."**

Section 3582(c)(1)(A), as amended by the First Step Act of 2018, vests this

---

[13] "The Fourth Circuit has confirmed that § 3582 (c)(1)(A)'s 'requirement that a defendant satisfy the threshold requirement before filing a motion in the district court is a non-jurisdictional claim-processing rule.' *United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021). Accordingly, 'it may be waived or forfeited and courts should not '*sua sponte* dismiss [a] motion based on the threshold requirement.'" *United States v. Elzy*, Crim. No. 09-288-JKB, ECF 207 at 2 (D. Md. February 2, 2022).

Court with the authority to reduce a sentence if: (1) the defendant presents

"extraordinary and compelling reasons" warranting a sentence reduction; (2) a

reduction would be consistent with "applicable policy statements" issued by the

Sentencing Commission; and (3) the § 3553(a) sentencing factors merit a reduction.

As the Fourth Circuit has held, however, there is currently no "applicable"

policy statement governing § 3582(c)(1)(A) motions filed by defendants. *See United*

*States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) (quoting *United States v. Brooker*, 976

F.3d 228, 230 (2d Cir. 2020)). In the absence of an "applicable" policy statement

governing motions filed by defendants, "district courts are 'empowered . . . to

consider *any* extraordinary and compelling reason for release that a defendant might

raise.'" *Id.* (emphasis in original). The unique confluence of factors in Mr. Addison's

case presents extraordinary and compelling reasons for relief.

To be sure, the nature of Mr. Addison's crimes do not preclude a reduction in

sentence. "Section 3582(c)(1) permits a district court to reduce a sentence in 'any

case'—not just . . . in cases involving low-level or non-violent offenses." *United States*

*v. Kibble*, 992 F.3d 326, 334 (4th Cir. 2021) (Gregory, C.J., concurring). Judges in this

federal district do grant compassionate release of defendants convicted of murder. *See,*

*e.g.*, *United States v. Gray*, Crim. No. CCB-95-364, 2021 WL 1856649, at *6 (D. Md.

May 10, 2021) (citing authority from this District and other districts) (granting

compassionate release to defendant convicted of murder); *see also, e.g.*, *Babb v. United*

*States*, Crim. No. ELH-04-910, 2021 WL 2315459 (D. Md. June 4, 2021) (reducing life

sentence for defendant convicted of drug conspiracy and sentenced to life based on murder cross-reference). "Courts in this district routinely impose sentences within the thirty-year range on defendants involved in drug-related killings." *United States v. Williams*, 2021 WL 3725435 at p. 3; No. CCB-07-0402, ECF No. 143 at 7 (D. Md. Aug. 23, 2021).

Therefore, the Court has the authority to reduce Mr. Addison's sentence if it finds that extraordinary and compelling circumstances warrant a reduction of his sentence.

### A. The Gross Disparity Between Mr. Addison's Sentence and Those of Mr. Addison's Co-Defendants Presents "Extraordinary and Compelling Reasons" for Sentencing Relief.

Judges in the District of Maryland and around the country have agreed that correcting sentencing disparities is authorized by 18 U.S.C. § 3582(c)(1)(A) and, accordingly, have granted release to inmates serving disproportionately long sentences. In particular, courts have found that a sentencing disparity with co-defendants, whether imposed at initial sentencing or arising later, may constitute an "extraordinary and compelling reason" in itself for a sentence reduction. *United States v. Payton*, Crim. No. PJM-06-341, 2021 WL 927631, at *2 (D. Md. Mar. 11, 2021) (finding extraordinary and compelling circumstances because of sentencing disparity

created by reduction of conspiracy leader's sentence); [14] *United States v. Edwards*, Crim

No. PJM-05-179, at *2 (D. Md. Apr. 22, 2021) (same); *United States v. Williams*, Crim.

No. PWG-90-135, 2021 WL 1662461, at *5 (D. Md. Apr. 28, 2021) (finding a

sentence reduction necessary to avoid an unwarranted sentencing disparity); *see United

States v. Stockton*, Crim. No. ELH-99-352, 2021 WL 1060347, at *14 (D. Md. Mar. 17,

2021) (considering sentence reduction of defendant's more culpable brother as a

factor that supports reducing defendant's sentence to time served); *United States v.

Vaughn*, No. 4:00CR126-CVE, ECF 1282 (N.D. Okla. July 1, 2021) (granting

compassionate release based on, among other reasons, the disparity between Vaughn's

sentence compared to co-defendants of greater culpability); *United States v. Cano*, No.

95-00481-CR-ALTONAGA, 2020 WL 7415833, at *6 (S.D. Fla. Dec. 16, 2020)

(finding a disparity between the defendant's life sentence and the 243-month sentence

initially imposed on the leader of the conspiracy, as well as the significantly shorter

sentences imposed on codefendants, to be a compelling reason to grant

---

[14] In *Payton*, the Court found that an unwarranted sentencing disparity between co-defendants is of
itself "an extraordinary and compelling circumstance that justifies a sentence reduction[]"
notwithstanding that the sentencing disparity was generated years after the imposition of the original
sentences. In *Payton*, the petitioner sought sentencing relief from his 292-month prison term after
serving nearly 15 years (180 months) of that sentence. Mr. Payton's codefendant was originally
sentenced to life imprisonment, but had been released to home confinement shortly before Mr.
Payton's motion for sentence reduction was filed. Mr. Payton successfully argued that this disparity
between his and his co-defendant's sentences warranted a sentence reduction. The Court found the
disparity sufficiently extraordinary and compelling under §3582(c)(1)(A) because "despite his more
reprehensible conduct, [Payton's co-defendant] is no longer incarcerated, and his sentence
reductions have resulted in a striking disparity." *Id.*

compassionate release); *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at *15 (S.D.N.Y. Apr. 6, 2020) ("[A]s the chart above demonstrates, Mr. Millan's life sentence is now significantly out-of-line with those of his co-defendants. A reduction of Mr. Millan's sentence therefore is needed to 'avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'")

This Court should, respectfully, find that the disparity between Mr. Addison's sentence and those of his co-defendants presents an "extraordinary and compelling reason" for sentencing relief. Mr. Addison's sentence far exceeds those served by his co-defendants, all of whom (except Mr. Morgan Kelly, apparently), were active members of the drug distribution scheme and/or active participants in the drug-related murders of Mr. Snider, Mr. Greer, and Mr. Miller. *See supra* Factual Background and Procedural History Section I.

Specifically, Mr. Addison's life sentence far exceeds the sentences served by Mr. Burrell, Mr. Ray, Mr. Brown, Mr. Boone, Mr. McLeod, Mr. Cook, and Mr. Kelly. As noted previously, co-defendant Burrell, who was the shooter in the murder of Mr. Snider and the shooter in the murder of Mr. Greer, served a sentence of about 15 years. The sentencing disparity that exists between the sentence that Mr. Burrell served and the sentence that Mr. Addison is serving is in itself an "extraordinary and compelling circumstance that justifies a sentencing reduction[]" notwithstanding that the disparity was created many years after the sentences were originally imposed.

*Payton, id.*

It is my understanding that at trial the evidence established that Mr. Ray was a shooter in the Bernard Miller murder. After being convicted at trial, he received a sentence of 262 months. And, after a successful appeal process, was released after having served only about five years of active incarceration. The sentencing disparity that exists between the sentence that Mr. Ray served and the sentence that Mr. Addison is serving is in itself an "extraordinary and compelling circumstance that justifies a sentencing reduction[]" notwithstanding that the disparity was created many years after the sentences were originally imposed. *Payton, id.*

It is my understanding that during Mr. Addison's trial the evidence established that Mr. Brown was a shooter in the Bernard Miller murder. Mr. Brown, who pleaded guilty to having participated in the drug trafficking related murder of Mr. Miller, received a sentence of 151 months of active incarceration. Notwithstanding that Mr. Brown was a government cooperator, the staggering disparity between a sentence of 12.5 years and a life sentence, again, constitutes in itself an "extraordinary and compelling circumstance that justifies a sentencing reduction." *Payton, id.*

Similarly, Mr. McLeod, who pleaded guilty to having participated in the drug trafficking related murder of Mr. Miller, received a sentence of 151 months of active incarceration. I understand that during Mr. Addison's trial the evidence established that Mr. McLeod was a shooter in the unlawful killing of Mr. Miller. Notwithstanding that Mr. McLeod was a government cooperator, the staggering disparity between a

sentence of 12.5 years and a life sentence, again, constitutes in itself an "extraordinary and compelling circumstance that justifies a sentencing reduction." *Payton, id.*

Mr. Keith Cook also pleaded guilty to having participated in the drug trafficking related murder of Mr. Miller, received a sentence of 240 months of active incarceration. It is my understanding that during Mr. Addison's trial the evidence established that Mr. Cook was the shooter that fired the shots that resulted in the death of Mr. Miller. The staggering disparity between a sentence of 20 years and a life sentence, again, constitutes in itself an "extraordinary and compelling circumstance that justifies a sentencing reduction." *Payton, id.*

Finally, Mr. Boone, who, as I understand the matter, was implicated as a shooter in the drug-related murder of Mr. Miller, received a sentence of 235 months of active incarceration for his role in the drug distribution activities of the conspiracy. The staggering disparity between a sentence of 19.5 years and a life sentence, again, constitutes in itself an "extraordinary and compelling circumstance that justifies a sentencing reduction." *Payton, id.*

All of the co-defendants described, *supra*, have been released years ago. Such disparities between Mr. Addison's sentence and those of his co-defendants present an extraordinary and compelling reason that, alone, establishes "extraordinary and compelling reasons" for a sentence reduction.

**B. The Disparity Between the Sentence Mr. Addison Received and the Lower Sentence He Would Receive if Sentenced Today Present**

**Extraordinary and Compelling Reasons for Sentencing Relief.**

Changes in the sentencing landscape since Mr. Addison was originally convicted and sentenced make his life sentence out of place with similarly situated defendants being sentenced today. This is important, as Judge Bennett recently explained: "[C]hanges in the sentencing law landscape are relevant to the Court's analysis of whether the Court's sentence appropriately addresses 'the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public.'" *United States v. Johnson*, No. RDB-07-0153, ECF No. 183 at 10-11 (D. Md. Oct. 14, 2020). This is to say, extraordinary and compelling reasons may be found where a defendant would be sentenced differently if convicted of the same offense because the sentence initially imposed no longer serves legislative objectives. *United States v. Millan, id.*

Mr. Addison is serving out a sentence that drastically exceeds the sentences imposed in similar cases today. [15] This Court, respectfully, should find that Mr. Addison's excessively long sentence is an overly harsh sentence which constitutes an extraordinary and compelling reason for reducing his sentence. *See, e.g., United States v.*

---

[15] The average prison sentence imposed nationally for murder in federal court is 255 months, *see* United States Sentencing Commission, Statistical Information Packet, Fiscal Year 2020, Fourth Circuit, Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statstics/state-district-circuit/20204c20.pdf (Data from the United States Sentencing Commission reflects that in fiscal year 2020, the national average sentence for murder was 255 months, and the Fourth Circuit average was 271 months).

*King*, Crim. No. TDC-05-203, slip op. at 5 (D. Md. May 24, 2021), ECF No. 190 ("The Court concludes that King has presented 'extraordinary and compelling reasons' arising from the gross disparity between his sentence . . . and the sentence he would receive if sentenced today that warrant a reduction pursuant to 18 U.S.C. § 3582(c)(l)(A)."); *United States v. Murray*, Crim. No. 05-0203-TDC (D. Md. May 24, 2012), (same). *See McCoy*, 981 F.3d at 286 ("[T]he district courts permissibly treated as 'extraordinary and compelling reasons' for compassionate release the severity of the defendants' [] sentences . . . ."); *see also United States v. Kratsas*, No. DKC-92-0208, 2021 WL 242501, at *4 (D. Md. Jan. 25, 2021).

At the time of sentencing in Mr. Addison's case, the Guidelines were mandatory. In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court ruled that the Guidelines were discretionary, not mandatory. Because of the mandatory nature of the Guidelines at sentencing, the Court was required to impose a life sentence as to Counts One, Two, and Four because the Court found that the applicable final adjusted base offense level was 47, which, consequently, resulted in a sentencing range of life.

However, *post-Booker*, judges in the District of Maryland have imposed reduced sentences of around 30 years for defendants who were found guilty of a murder. In terms of sentences being imposed today for murder, courts in this District have "recognized the bluntness of mandatory life sentences . . . ." *United States v. Gray*, Crim. No. CCB-95-364, 2021 WL 1856649, at *6 (D. Md. May 10, 2021) (citing authority from this District and other districts) (granting compassionate release to

defendant convicted of murder).  Significantly, today, in murder cases, the

government often extends plea offers that allow judges to avoid being compelled to

impose life sentences, and, accordingly, judges in this District commonly impose

sentences for murder that are significantly shorter than life.  *See e.g., United States v.*

*Bazemore*, Crim. No. CCB-16-597 (D. Md. Nov. 15, 2018), ECF 510 (imposing

sentence of 300 months[16] for shooting four victims and killing one, *see* ECF 368);

*United States v. Hernandez-Guevara*, Crim. No. PX-17-382 (D. Md. Oct. 18, 2019), ECF

424 (imposing sentence of 292 months on MS-13 member who conspired to commit

a brutal murder and later stabbed and shot victims while attempting to rob them, *see*

ECF 192-1); *United States v. Lawson*, Crim. No. GLR-16-453 (D. Md. Aug. 23, 2019),

ECF 713 (imposing sentence of 276 months on member of murderous street gang

who, on separate occasions over three years, committed one murder and attempted to

commit two further murders, *see* ECF No. 604 at 10); *United States v. Chase*, Crim. No.

GLR-16-453 (D. Md. Oct. 18, 2017), ECF 397 (imposing sentence of 300 months on

member of the same gang who, in combination with his girlfriend and two others,

lured into isolation and then murdered someone who had made a pass at his

girlfriend, *see* ECF 358 at 10-11); *United States v. Melendez-Rivera*, Crim. No. PX-17-154

(D. Md. June 20, 2019), ECF 122 (imposing sentence of 240 months on MS-13

---

[16] This sentence was later reduced to 285.33 months to reflect an uncredited period of
imprisonment. *United States v. Bazemore*, Crim. No. CCB-16-597 (D. Md. Nov. 26, 2018), ECF
No. 510.

member who conspired to isolate and murder victim, eventually holding his head underwater until he drowned, *see* ECF 94-1); *United States v. Trayvon Hall*, Crim. No. 19-568-RDB (D. Md. December 7, 2022)(defendant, the leader of a violent sub-set of the Crips dedicated to drug trafficking, robbery, assaults, and murders, acknowledged in his plea agreement that he was personally responsible for murdering three rival gang members on three separate dates, in addition to non-fatally shooting numerous other victims, and to directing subordinates to shoot to kill rival gang members; in addition to pleading guilty to 18 U.S.C. § 1962, defendant pleaded guilty to conspiracy to possess with intent to distribute controlled substances, 21 U.S.C. § 846 and § 841, with a maximum sentence of 40 years; utilizing the murder cross-reference, U.S.S.G. § 2A1.1, defendant's final adjusted base offense level was 50; the sentencing judge agreed to follow the parties' Rule 11(c) plea agreement and imposed a sentence of 40 years).  And, courts have imposed sentences of similar length, a term of years, even when the defendant is found guilty by a jury.  *See, e.g., United States v. Floyd*, Crim. No. CCB-16-597 (D. Md. July 23, 2019), ECF No. 691 at 2 (imposing sentence of 360 months' imprisonment on defendant convicted of racketeering conspiracy, 18 U.S.C. § 1962, that included conspiracy to murder, ECF 491 at 9).

Moreover, Judges in this District have reduced life sentences to a term of years in the context of a motion for sentence reduction pursuant to § 3582.  For example, *see*:

- *United States v. Williams*, *id*, the defendant was sentenced pursuant to the U.S.S.G. § 2A1.1 cross-reference for murder based on a finding at sentencing that he shot and killed a woman who was cooperating against him.  He was sentenced to life

in prison without parole. The Court, noting that "[c]ourts in this district routinely impose sentences within the thirty-year range on defendants involved in drug-related killings," reduced Mr. Williams' life sentence to 360-months imprisonment pursuant to Section 404 of the First Step Act. *Id.* at 7.

- In *United States v. Martin*, No. RDB-04-029, ECF 868 (D. Md. July 27, 2021), the defendant was charged with a number of drug and firearms offenses based on his involvement in a drug-trafficking organization, including two counts of murder in aid of racketeering and two counts of possession of a firearm in furtherance of drug trafficking and a crime of violence resulting in death. Mr. Martin proceeded to trial and was acquitted of murder, but was found guilty of drug and racketeering charges. The Court calculated his guidelines under § 2A1.1. The Court imposed a total sentence of 400 months in prison. The Court later reduced Mr. Martin's sentence, finding that a sentence of 300 months would be "consistent with this Court's current sentencing practices for similar crimes." ECF No. 868 at 8.

- In *United States v. Babb*, No. ELH-04-0190, ECF No. 275 (D. Md. June 7, 2021), the defendant was charged with a number of drug and firearms offenses based on his involvement in a "drug trafficking organization that distributed large quantities of powder cocaine and cocaine base in Maryland," including two counts of use of a firearm to commit murder in furtherance of a drug-trafficking crime. *Id.* at 3. Mr. Babb was convicted at trial of all counts except for the murder counts. Nevertheless, at sentencing, his guidelines were calculated under § 2A1.1. Later, the Court, weighing the offense conduct and Mr. Babb's prior record against his disciplinary and programming records in the Bureau of Prisons ("BOP"), determined that a sentence of 30 years was appropriate.

- In *United States v. Gray*, *id*, the Court reduced the life sentence for David Gray, who in 1996 was found guilty of murder in aid of racketeering and possession of a firearm in furtherance of a crime of violence, an offense he committed when he was 23 years old. The Court, balancing the extremely serious nature of the offense conduct and the fact that Mr. Gray "was 'deeply involved' in the drug trade in Baltimore" against his difficult upbringing, his relative youth at the time of the shooting, and his record of rehabilitation, reduced his sentence under § 3582(c)(1)(A) to time served (about 26 years). *Id.* at *4.

- In *United States v. Cheese*, No. ELH-98-0359, ECF No. 911 (D. Md. July 2, 2020), this Court reduced the life sentence for Alfred Cheese, who, as a man in his early thirties, was part of a "very violent" drug-trafficking organization, "particularly

with respect to rival drug dealers and potential witnesses." *Id.* at 2. He was sentenced to life pursuant to the cross-reference under § 2A1.1. Later, this Court reduced his sentence under Section 404 to 28 years, and later granted a further sentence reduction under § 3582(c)(1)(A) to time served, resulting in Mr. Cheese's release after slightly less than 23 years in continuous custody.

- In *United States v. Brown et al.*, the Court reduced the life sentences for Bobby Brown, Thomas Carter, and Julius Brown to 40 years, 35 years, and time served, respectively. *See United States v. Julius Brown*, No. ELH-00-0100, ECF No. 465 (D. Md. Dec. 17, 2020); *United States v. Carter*, No. ELH-00-0100, ECF No. 424 (D. Md. Apr. 17, 2020); *United States v. Bobby Brown*, No. ELH-00-0100, ECF No. 414 (D. Md. Mar. 16, 2020). All three co-defendants were convicted of drug- and gun-related charges following a jury trial, and Julius Brown was also convicted of threatening a witness. At sentencing, Judge Davis applied the murder cross-reference and imposed sentences of life plus 30 years for each of the three men. In the case of Bobby Brown, weighing the § 3553(a) factors, including his leadership and obstruction enhancements, the fact that he had a substantial criminal history establishing a natural criminal history category of V (but triggering a criminal history category of VI under the career-offender provision), and his disciplinary record (which included two 100-level infractions for possessing a dangerous weapon, one 100-level infraction for assaulting with serious injury, and three 200-level infractions for fighting), the Court reduced his sentence under Section 404 to 40 years. Acknowledging Mr. Carter's lesser role in the charged murder and his more modest criminal history (his prior record resulted in a criminal history category III), the Court reduced his sentence under Section 404 to 35 years. And, in the case of Julius Brown, the Court reduced his sentence under § 3582(c)(1)(A) to time served, despite his "extensive" criminal history (he had six criminal history points, triggering a criminal history category III) and the fact that he was significantly older than his co-defendants (he was 50 years old at the time of the charged conspiracy). Julius Brown was released after about 20 ½ years in custody.

- In *United States v. Holland*, No. GLR-96-0399, ECF No. 661 (D. Md. Aug. 18, 2021), the government alleged that Mr. Holland was the "leader of a violent drug trafficking organization that was responsible for murders, robberies, and significant narcotics distribution." *Id.* at 2-3. Mr. Holland proceeded to trial and was convicted of all but one of the drug-related counts and the murder count. At sentencing, the Court found by clear and convincing evidence that he had committed the murder charged by the government and calculated his guidelines under § 2A1.1 and sentenced Mr. Holland, then 35 years old, to life in prison.

Mr. Holland later moved for a sentence reduction under Section 404. The Court, considering that serious nature and circumstances of the offenses and the need for deterrence, reduced his sentence to 35 years. The Court also reduced the life sentences of Mr. Holland's co-defendants, Kevin Jones and Daniel Hill, to 330 months each.

- In *United States v. Ahmad Linton*, No. JKB-98-00258 (D. Md. Sept. 27, 2021), Ahmad Linton was sentenced to a mandatory life sentence for a conviction for murder in aid of racketeering which he participated in when he was just twenty-two years old. Citing to Mr. Linton's relative youth at the time, and his limited criminal record, the Court found that the government would not insist on a life sentence today. The Court further found that the "sheer and unusual length" of Mr. Linton's sentence established "extraordinary and compelling reasons" for relief. *Id.* at 4. The Court reduced Mr. Linton's life sentence to 30 years.

- *United States v. Anthony Fleming*, No. 08-CR-00086-ELH, ECF 1836 (D. Md. March 11, 2022): Anthony Fleming received a life sentence after the sentencing court applied the murder cross-reference pursuant to U.S.S.G. § 2A1.1 and § 2D1.1(d)(1). However, notwithstanding that "… Fleming's offenses … were extraordinarily grave[] [and that] … Lamont Jackson was brutally murdered … [and][c]rimes of this magnitude warrant serious punishment[]", *id.* at 48, the Court reduced Mr. Fleming's sentence of life to a sentence of 30 years after considering his difficult upbringing, his youth at the time of the shooting (19 years old), his rehabilitative efforts while incarcerated, and his expressions of remorse for his prior criminal acts, and the fact that "Fleming's sentence of life imprisonment is far in excess of more recent sentences in this District for similar offenses." *Id.* at 48-50.

In sum, recent original sentences imposed by this Court and recent sentence reductions granted by this Court demonstrate that Mr. Addison's sentence of life is out of step with sentences imposed in similar cases today, establishing an extraordinary and compelling reason in itself for a sentence reduction.

**II.** **Applying the § 3553(a) Factors, the Court Should Exercise Its Discretion to Reduce Mr. Addison's Sentence to 30 Years.**

Because Mr. Addison has established extraordinary and compelling reasons for a sentence reduction, the Court must engage in an analysis of the § 3553(a) factors to determine whether, and to what extent, to reduce his sentence. Under *Pepper v. United States*, 562 U.S. 476 (2011), courts can, and in fact must, consider post-offense developments under § 3553(a), which provides "the most up-to-date picture" of the defendant's history and characteristics and "sheds light on the likelihood that [the defendant] will engage in future criminal conduct." *Id.* at 492. After considering all of the circumstances in this case, the Court should conclude that a sentence of 30 years is sufficient to satisfy the purposes of sentencing. Indeed, the 30-year sentence Mr. Addison seeks is commensurate with what people convicted of similar conduct receive today.

Mr. Addison is poised to be a productive member of his community: He has participated in programming which allowed him to obtain his General Equivalency Degree. *See* Exhibit Two, BOP records. Mr. Addison reports that he has maintained steady employment while serving out his sentence; in fact, since 2014 Mr. Addison has been the Head Orderly on Unit B-1 at USP Canaan. *See*, Mr. Addison's Memo, at pp. 20-23.

It seems to me that a good measure of the quality of Mr. Addison's humanity can be found in the letters of support that friends and family have addressed to the Court, Exhibit Three:

"Andre has matured and grown over the years and kept his heart pure and

stayed focused, despite his situation."[17] "He has so much to offer this world — he is bright, compassionate, giving, and motivated."[18] "I feel with Andre's knowledge, experience and reformation he has a lot to offer society.  As a community servant, I am a firm believer that inmates such as Andre who have been reformed are a great asset to today's youth population who are at high-risk."[19]

"I have known Mr. Addison for approximately [12]yrs now, and from the moment I met Mr. Addison he has been nothing but a positive role model for me and multiple other inmates that has been incarcerated in various institutions with me and Mr. Addison. … Me and other younger inmates has always relied on Mr. Addison's guiding's, input, advice and outlook on matters that arise on a daily basis in environments like this, because we know that he's definitely one of the few people that you can depend on to give you the best advice how to resolve certain issues, in a positive way, that will keep everyone involved to come out better and smarter people in the end.  These types of role-models like Mr. Addison I believe is extremely needed out in our society to help the youth to understand that its different and better ways[sic] to resolve matters, other than resorting to violence. I know had I had a positive role-model in my Life like Mr. Addison growing up in my neighborhood I will not be writing this meaningful letter today on his behalf because my whole entire

---

[17] Ms. Shelnell Pettiford.
[18] Ms. Deidre Moultrie.
[19] Ms. Maray Brandon.

Life would have had a different outcome, I would have the tools that needed to make better decisions in my youthful days." [20]

"Most people would have viewed this same incarceration as a curse, but encountering Mr. Addison I take it as a blessing. ... He has helped mold and redirect my thought process to focusing on more positive aspects of life than negative. I heard words from Mr. Addison that I'll never forget. During our very first conversation he stated: 'you can make this stay here your university or your graveyard.' At first I couldn't process the meaning until I watched him lead by example. ... Watching Mr. Addison on a daily basis interact and mentor some of the most hardening criminals, young and old, I know sure he would have a strong and powerful impact on whatever community he steps into in the real world. In communities today we need more men liked Mr. Addison that strive to be part of the solution not the problem." [21]

When Mr. Addison was charged in this case he was a 27 year old man-child, who was then constitutionally incapable of living a law abiding and productive life. Now, 25 years later, at age 52, he has meaningfully matured, and possesses the employment skills that will permit him to be productive member of his community. Mr. Addison is asking the Court to impose a 30-year sentence. This Court should exercise its discretion pursuant to § 3582(c)(1)(A) to give Mr. Addison a release date.

_____

[20] Mr. Jayvan Allen.
[21] Mr. Jamal Douglas.

## CONCLUSION

Mr. Addison should be viewed as a "success story" of the criminal justice system, in which the principles underlying the system and the specific needs for incarceration, including rehabilitation, just punishment and future deterrence, have been accomplished.

Mr. Addison has demonstrated extraordinary and compelling reasons for a sentence reduction and asks this Court to reduce his sentence. A consideration of the relevant sentencing factors under 18 U.S.C. § 3553(a) support a determination that a sentence reduction is warranted in this case. Accordingly, Mr. Addison asks the Court to reduce his sentence to 30 years of incarceration.

Respectfully submitted,

_____

José A, Molina, Esquire
219 W. Joppa Road, 2nd fl
Towson, Maryland 21204
Phone: (443) 519-5654
Fax: (443) 519-5655
Email: jamolinalaw@gmail.com


Cc:     Mr. Jason Medinger, AUSA (*Via* PDF-e-mail)